IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

SHERMAN DIVISION

| | | |
|---|---|---|
| JERRY LESTER JACKSON, #16527-078 | § | |
| VS. | § | CIVIL ACTION NO. 4:15cv161 |
| | | CRIM. NO. 4:09CR00136-002 |
| UNITED STATES OF AMERICA | § | |

REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Movant Jerry Lester Jackson, an inmate confined at F.C.I. Ft. Worth, brings this motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The motion was referred for findings of fact, conclusions of law and recommendations for the disposition of the motion.

Procedural Background

On August 13, 2009, Jackson and two co-defendants were indicted for engaging in a conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846. On September 27, 2010, a jury found him guilty and further found that the amount of cocaine attributable to him was 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine. On April 18, 2012, Jackson was sentenced to the statutory minimum of 20 years of imprisonment. The conviction was affirmed. *United States v. Jackson*, 544 F. App. 380 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1327 (2014). In its decision, the Fifth Circuit held that (1) the evidence of Jackson's guilt was overwhelming, (2) there was no material variance between the indictment and trial evidence, and (3) the trial court did not commit plain error in its evidentiary decisions and instructions.

1

The present § 2255 motion was filed on March 4, 2015. Jackson brings the following grounds for relief:

1. The trial court's decision to allow extensive testimony relating to the guilty pleas and/or plea agreements and convictions of accomplices/witnesses violated fundamental fairness and due process of law under the Fifth Amendment;

2. The trial court's admission of evidence concerning the guilty plea and/or plea agreements and convictions of accomplices/witnesses violated the Sixth Amendment;

3. The indictment was constructively amended in violation of the Fifth Amendment Grand Jury Clause when the trial court permitted the prosecution to offer proof of other wrong acts not mentioned in the indictment;

4. Jurisdictional error where the indictment returned against Jackson was passed upon by fewer than twelve jurors in violation of the Fifth Amendment Grand Jury Clause;

5. The conspiracy count as drafted in the indictment is vague and indefinite on its face, in violation of the Fifth and Sixth Amendments of the Constitution;

6. Ineffective assistance of counsel in violation of the Fifth and Sixth Amendments;

7. Prosecutorial misconduct rendered Jackson's trial fundamentally unfair in violation of the Fifth Amendment Due Process Clause;

8. The essential elements in the single count conspiracy charge in the indictment was not supported by the evidence, which in turn deprived Jackson of due process of law in violation of the Fifth Amendment;

9. The cumulative effect of the trial errors resulted in a violation of the Fifth Amendment Due Process Clause; and

10. The trial court's denial of Jackson's pre-trial motion for a bill of particulars deprived him of a fair trial in violation of the Due Process Clause of the Fifth Amendment.

Jackson filed a memorandum of law in support of his § 2255 motion (docket entry #8). The Government filed a response (docket entry #13) on August 17, 2015. Jackson filed a reply (docket entry #15) on September 4, 2015.

Factual Background

The Fifth Circuit discussed the facts of the crime as follows:

> The evidence overwhelmingly established that Jackson, Lonnie Johnson, and numerous other coconspirators pooled their money to purchase kilograms of powder cocaine at a lower price from sources in Dallas and Fort Worth, Texas, including Benito Figueroa and Salvador Alvarez. Alvarez delivered the cocaine to Johnson and others at three stash houses. After Johnson, Jackson and others obtained the powder cocaine, they used the houses on Jo Lyn Street to store it, convert it into crack cocaine, and sell it to their own individual customers. Although the evidence did not establish that Jackson personally knew the coconspirators named in the indictment, the evidence established that he was aware that there were other participants in a large scale conspiracy in which numerous persons agreed to possess large quantities of cocaine with the intent to distribute it as charged in the indictment. The Government was not required to prove that Jackson knew all the details of the objectives of the conspiracy or the identity of all conspirators, as long as he knowingly participated in some fashion in the larger objectives of the conspiracy.

*Jackson*, 544 F. App'x at 381-82.

Discussion and Analysis

As a preliminary matter, it should be noted that a § 2255 motion is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). The movant in a § 2255 proceeding may not bring a broad-based attack challenging the legality of the conviction. The range of claims that may be raised in a § 2255 proceeding is narrow. A "distinction must be drawn between constitutional or jurisdictional errors on the one hand, and mere errors of law on the other." *United States v. Pierce*, 959 F.2d 1297, 1300-01 (5th Cir. 1992). A collateral attack is limited to alleging errors of "constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). The role of § 2255 has been defined by the Fifth Circuit as follows:

> Section 2255 provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to collateral attack.

*United States v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1995) (citations omitted). "Section 2255 does not reach errors of constitutional or jurisdictional magnitude that could have been reached by a direct appeal." *Id.* Similarly, "issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) (citing *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980)); *United States v. Goudeau*, 512 F. App'x 390, 393 (5th Cir. 2013). *See also United States v. Fields*, 761 F.3d 443, 466 (5th Cir. 2014) (denying a certificate of appealability for a claim decided on direct appeal).

The Government appropriately argued that several of Jackson's claims were decided on direct appeal and cannot be relitigated in a § 2255 proceeding. *Kalish*, 780 F.2d at 508. Jackson's first two claims about the testimony of accomplices/witnesses relating to guilty pleas and plea agreements were considered and rejected by the Fifth Circuit on direct appeal. *Jackson*, 544 F. App'x at 382-83. The claims are barred from collateral review because they were decided on direct appeal.

Jackson's third claim alleging that the indictment was constructively amended when the trial court permitted the prosecution to offer proof of other wrong acts not mentioned in the indictment was also considered and rejected by the Fifth Circuit on direct appeal. *Id.* at 383. As such, the third claim is barred from collateral review because it was decided on direct appeal.

Jackson's eighth claim alleging that the essential elements in the single count conspiracy charge in the indictment were not supported by the evidence was also considered and rejected by the Fifth Circuit on direct appeal. *Id.* at 381-82. Indeed, the Fifth Circuit characterized the evidence against Jackson as "overwhelming." *Id.* As such, the eighth claim is barred from collateral review because it was decided on direct appeal.

4

The Government also argued that several claims must be rejected because they could have been brought on direct appeal. Issues that could have been raised on direct appeal but were not raised on direct appeal are not cognizable on collateral review unless the movant shows cause and prejudice for his procedural default or a fundamental miscarriage of justice. *United States v. Lopez*, 248 F.3d 427, 433 (5th Cir. 2001); *United States v. Pierce*, 959 F.2d 1297, 1300-02 (5th Cir. 1992). Jackson's fifth claim that the indictment was unconstitutionally vague could have been brought on direct appeal. In his reply, Jackson argues that he may raise the claim in this § 2255 proceeding because he is actually innocent on the crime. He raises this same argument for every claim that could have been raised on direct appeal.

A claim of actual innocence is "'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup v. Delo*, 513 U.S. 298, 315 (1995) (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). *See also Rocha v. Thaler*, 626 F.3d 815, 824 (5th Cir. 2010), *cert. denied*, 132 S. Ct. 397 (2011). This basic principle was recently reaffirmed by the Supreme Court in *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931 (2013), and by the Fifth Circuit in *Burton v. Stephens*, 543 F. App'x 451, 458 (5th Cir. 2013). In both *McQuiggin* and *Rocha*, the petitioners were trying to overcome procedural problems by arguing actual innocence in order to have their ineffective assistance of counsel claims considered on the merits. In *Rocha*, the Fifth Circuit stressed that a petitioner must make a "sufficient gateway showing of actual innocence to justify having his federal habeas claim considered on the merits." 626 F.3d at 825 (citing *House v. Bell*, 547 U.S. 518, 522 & 553-54 (2006)).

The Supreme Court has stressed that the burden of showing actual innocence is extraordinary:

> To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable jury would have convicted him in light of the new evidence. The petitioner thus is required to make a stronger showing than that needed to establish prejudice. At the

5

same time, the showing of "more likely than not" imposes a lower burden of proof than the
"clear and convincing" standard required under *Sawyer*. The *Carrier* standard thus ensures
that petitioner's case is truly "extraordinary."

*Schlup v. Delo*, 513 U.S. at 327.

The Supreme Court has further illuminated the standard enunciated in *Schlup*. "First, although '[t]o be credible' a gateway claim requires 'new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial,' [*Schlup*, 513 U.S.] at 324, 115 S. Ct. 851, the habeas court's analysis is not limited to such evidence." *House*, 547 U.S. at 537. The "habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327-28). Then, "[b]ased on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.'" *Id.* (quoting *Schlup*, 513 U.S. at 329).

Second, "the *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House*, 547 U.S. at 538 (quoting *Schlup*, 513 U.S. at 327). Although "in the vast majority of cases, claims of actual innocence are rarely successful," (quoting 513 U.S. at 324), the *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. *Id.* Instead,

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt - or, to remove the double negative, that more likely than not any reasonable juror would have a reasonable doubt.

*Id.* Finally, the Supreme Court explained that "the gateway actual-innocence standard is 'by no means equivalent to the standard of *Jackson v. Virginia*, 442 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1970),' which governs claims of insufficient evidence." *Id.* (quoting *Jackson*, 442 U.S. at 330). Instead, '[b]ecause a *Schlup* claim involves evidence the jury did not have before it, the inquiry

6

requires the federal court to assess how reasonable jurors would react to the overall, newly supplemented record." *Id.* This may include consideration of "the credibility of the witnesses presented at trial." *Id.* at 537-38 (quoting *Jackson*, 442 U.S. at 330).

Jackson does not satisfy the actual innocence standard in either his memorandum or his reply. He utterly failed to present new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial. Instead, he merely reviewed the evidence brought at trial and presented a laundry list of perceived errors. He argues that "but for the numerous Constitutional errors, no reasonable fact-finder would have found him guilty of the underlying offense." Memorandum at 2. This type of analysis does not, however, satisfy the actual innocence exception.

In light of the foregoing, Jackson's fifth claim that the indictment was unconstitutionally vague must be rejected because it could have been brought on direct appeal. He failed to "clear the procedural hurdle for a collateral challenge." *See Pierce*, 959 F.2d at 1304-05. Thus the claim is procedurally barred.

In addition to the foregoing, even if the claim was not procedurally barred from consideration, it would have to be dismissed for the additional reason that it lacks merit. "To be sufficient, an indictment must conform to minimal constitutional standards, standards that are met where the indictment alleges every element of the crime charged and in such a way to enable the accused to prepare his defense . . ." *United States v. Partida*, 385 F.3d 546, 554 (5th Cir. 2004). "To prove a conspiracy under 21 U.S.C. § 846, the [G]overnment must establish that:(1) an agreement existed between two or more persons to violate federal narcotics law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *United States v.*

*Daniels*, 723 F.3d 562, 570 (5th Cir. 2013) (internal quotation marks and citation omitted). The indictment reads as follows:

> That from sometime in or about February 2008, and continuously thereafter up to and including August 13, 2009, in the Eastern District of Texas and elsewhere, Benito Figueroa, Jerry Lester Jackson, Edson Frank Curtis, defendants herein, did knowingly and intentionally combine, conspire, and agree with each other, and with other persons known and unknown to the United States Grand Jury, to knowingly and intentionally possess with intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a violation of Title 21, United States Code, Section 841(a)(1). All in violation of Title 21, United States Code, Section 846.

The indictment in this case tracked the requite language in *Daniels* and satisfied the criteria set out in *Partida*. The indictment was not defective.

The Government further argues that Jackson's seventh claim alleging prosecutorial misconduct could have been raised on direct appeal. Jackson claims that the prosecutor committed misconduct by (1) eliciting prejudicial testimony, (2) bolstering testimony of the co-defendant with their plea agreements, (3) improperly urging the jury to consider the evidence, (4) improperly questioning witnesses, and (5) using false testimony. All of Jackson's prosecutorial misconduct claims were based on the record and could have been raised on appeal. Jackson did not show cause and prejudice for his failure to raise the prosecutorial misconduct claim on direct appeal or a fundamental miscarriage of justice. As was previously explained, his actual innocence argument lacks merit; thus, ground number seven is procedurally barred because it could have but was not presented on direct appeal.

The Government also argued that Jackson's tenth claim concerning the trial court's denial of his pre-trial motion for a bill of particulars could have been raised on direct appeal. Jackson did not show cause and prejudice for failing to raise the claim on direct appeal or a fundamental miscarriage of justice; thus, it is procedurally barred.

With respect to Jackson's various claims that he could have raised on direct appeal and is attempting to do so now, the Court notes that Jackson chose to represent himself on direct appeal. He alone is at fault for failing to raise these claims on direct appeal. A criminal defendant generally has a right to represent himself. *See Faretta v. California*, 422 U.S. 806 (1975). The decision to do so, however, is fraught with danger. In dissent in *Farretta*, Justice Blackmun noted the old proverb,"one who is his own lawyer has a fool for a client," and opined that the Supreme Court "by its opinion today bestows a constitutional right on one to make a fool of himself." *Id.* at 852.

Claims four, six and nine remain pending before the Court and should not be dismissed for procedural reasons. In claim number four, Jackson argues that the indictment was passed upon by fewer than twelve jurors in violation of the Fifth Amendment Grand Jury Clause. In his memorandum, Jackson states that he *believes* that the indictment was not returned by the grand jury as a whole; instead, it was drawn in private by the prosecutor and the foreman. The Government's response did not address the claim. Nonetheless, the claim must be rejected because Jackson offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a collateral attack on his conviction. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983). Furthermore, this Court received the indictment from the grand jury. The claim lacks any basis in fact.

Jackson alleges in claim number six, as well as subclaims in other grounds for relief, that his trial attorney was ineffective. Ineffective assistance of counsel claims are governed by the Supreme Court's standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs. *Id.* at 687. Under the first prong, he must show that counsel's performance was deficient. *Id.* To establish deficient performance, he must show that "counsel's representation fell below an objective standard of

reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Id.* at 688. The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.* at 690. Under the second prong, the petitioner must show that his attorney's deficient performance resulted in prejudice. *Id.* at 687. To satisfy the prejudice prong, the habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. An ineffective assistance of counsel claim fails if a petitioner cannot satisfy either the deficient performance or prejudice prong; a court need not evaluate both if he makes an insufficient showing as to either. *Id.* at 697.

Jackson initially argued that his attorney was ineffective for failing to object and to request limiting instructions. He did not develop the claim in his § 2255 motion or his memorandum. Once again, Jackson offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a collateral attack on his conviction. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Moreover, he failed to satisfy either *Strickland* prong. The first ineffective assistance of counsel claim lacks merit.

Jackson also alleged that his attorney was ineffective for failing to file appropriate pretrial motions. In his memorandum, he complained that counsel failed to file a single pretrial motion. As with his previous ineffective assistance of counsel claim, he offered nothing other than conclusory allegations and bald assertions, which are insufficient to support a collateral attack on his conviction. *See Miller*, 200 F.3d at 282; *Koch*, 907 F.2d at 530; *Ross*, 694 F.2d at 1011. Moreover, he failed to satisfy either *Strickland* prong. The second ineffective assistance of counsel claim lacks merit.

Jackson also alleged that his attorney was ineffective for failing to file a motion for a mistrial. In his memorandum, he asserted that counsel should have filed a mistrial due to the admission of prejudicial evidence. However, the Fifth Circuit rejected his claims on direct appeal challenging the admission of such evidence. Counsel was not required to make frivolous or futile motions or objections. *Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002); *Koch*, 907 F.2d at 527. Jackson has not satisfied either *Strickland* prong with respect to this ineffective assistance of counsel claim; thus, it should be rejected.

As a subclaim in claim number five, Jackson also alleged that his attorney was ineffective for failing to object to the indictment. The indictment, however, was sufficient. Counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527. Jackson has not satisfied either *Strickland* prong with respect to this claim; thus, it should be rejected.

As a subclaim in claim number seven, Jackson alleged that his attorney was ineffective for failing to object to prosecutorial misconduct. He did not, however, show that counsel had any reason to object to the prosecutor's actions. He likewise failed to show prejudice. He did not satisfy either *Strickland* prong; thus, the claim should be rejected.

As a subclaim to claim number eight, Jackson alleged that his attorney was ineffective for failing to object based on insufficient evidence. Once again, the Fifth Circuit found that the evidence was overwhelming. Counsel was not required to make frivolous or futile motions or objections. *Johnson*, 306 F.3d at 255; *Koch*, 907 F.2d at 527. Jackson has not satisfied either *Strickland* prong with respect to this claim; thus, it should be rejected.

Overall, none of Jackson's ineffective assistance of counsel claims have any merit. Such claims should be rejected.

Finally, Jackson makes a cumulative error claim. The Fifth Circuit has regularly rejected cumulative error claims while noting that collateral relief is available only for cumulative errors that are of constitutional dimension. *Coble v. Quarterman*, 496 F.3d 430, 440 (5th Cir. 2007); *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir.), *cert. denied*, 522 U.S. 880 (1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993). The Fifth Circuit has emphasized that "[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised." *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996) (citing *Derden v. McNeel*, 978 F.2d 1453, 1461 (5th Cir. 1992)), *cert. denied*, 519 U.S. 1094 (1997). Because all of Jackson's claims lack merit, he has failed to show that he was denied due process as a result of cumulative errors. *United States v. Moye*, 951 F.2d 59, 63 n.7 (5th Cir. 1992); *Derden*, 978 F.2d at 1454. His ninth claim should be rejected.

In conclusion, the motion to vacate, set aside or correct Jackson's sentence should be denied.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a proceeding under § 2255 "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(B). Although Jackson has not yet filed a notice of appeal, it is respectfully recommended that this Court, nonetheless, address whether he would be entitled to a certificate of appealability. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (A district court may *sua sponte* rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before the court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the

requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Henry v. Cockrell*, 327 F.3d 429, 431 (5th Cir. 2003). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, it is respectfully recommended that reasonable jurists could not debate the denial of Jackson's § 2255 motion on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is respectfully recommended that the court find that Jackson is not entitled to a certificate of appealability as to the claims raised.

Recommendation

It is accordingly recommended that Jackson's motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 be denied and the case be dismissed with prejudice. It is further recommended that a certificate of appealability be denied.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An

13

objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 1st day of October, 2015.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE